IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| RICHARD G. VENTO, et al ) | |
| ) | |
| Plaintiffs, ) | Civil No. 3:09-cv-174 |
| ) | |
| v. ) | |
| ) | |
| DUANE CRITHFIELD, et al ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS EMERGENCY MOTION TO STAY THE DEPOSITION OF CHARLES D'ANGELO**

Plaintiffs, by and through their respective counsel, oppose the Defendants' Emergency Motion for a Stay of the Deposition of Charles D'Angelo and in support of the opposition sets forth the following:

**I . INTRODUCTION – THE ATTEMPTS TO OBTAIN CDO DOCUMENTS**

Throughout the proceedings before this Court that have now been pending for over two (2) years, the Court has consistently and without equivocation indicated that the discovery schedule should be strictly adhered to and that both jurisdictional and non jurisdictional discovery should take place without delay and without impediment. Defendants present motion is a transparent attempt to abort the lawfully noticed deposition of Charles D'Angelo who is in possession of crucial documentary materials, and relevant information and documents that relate to the Plaintiffs' investment in the alleged C.D.O. fund that Defendant Duane Crithfield induced Plaintiffs to place $10 million of their investment funds into that plaintiffs have been trying to obtain from the defendants from day one.

1

Despite the fact that the Defendants allege that certain Defendants have "challenged personal jurisdiction" there has been no restriction on "fact discovery" and even if there was, Duane Crithfield, who personally induced Plaintiffs into the subject C.D.O. investment, has never challenged jurisdiction. Crithfield has answered and throughout all of the proceedings before this Court, he has appeared, and has actively litigated (see Order of the Court Docket dated September 21st 2011)

The Plaintiffs Amended Complaint (Document No. 4) at paragraphs one hundred sixty-two (162) through and including one hundred sixty-six (166) sets out just some of the wrongful conduct of Crithfield. These paragraphs in the complaint that was given to defendants over two years ago articulate his scheme, the conversion, inducements, and fraudulent conduct with respect to the C.D.O. investment:

> **162) Crithfield unlawfully, knowingly and willfully induced Plaintiffs to agree to invest $10 million into two Collaterized Debt Obligations ("CDO") in Mulberry Street CDO Limited and Mulberry Street CDO II Limited, recommended by Crithfield and guaranteed by him to be a fully liquid investment.**
>
> **163) Crithfield made glowing recommendations to Richard Vento about the wonderful value and returns that he and the other Plaintiffs would receive from the Mulberry CDOs.**
>
> **164) Defendants made a booking entry that signified that these CDOs were transferred from the WHT account to the account of Plaintiffs.** *Plaintiffs do not know if Defendants actually transferred or titled the CDOs or anything else of value to the Plaintiffs.*
>
> **165) Regardless, Defendants illegally, knowingly and willfully bailed themselves out of other financial obligations and financial problems by misappropriating Plaintiffs" funds. In this regard Crithfield and the other defendants engaged in conduct that is no different than that of other well publicized Ponzi scheme architects.**

**166) Moreover, the fraudulently procured transfer of Plaintiffs" $10 million, allegedly for CDO purchases, and subsequent transfer to pay other obligations of the racketeering enterprise is a violation of the federal money laundering statute and is specifically prohibited by the federal and Virgin Islands RICO statute.**

**167) Defendants purchased no new interest in the Mulberry CDOs when they took the Plaintiffs" money.**

For years the plaintiffs have been attempting to cause the defendants to turn over the required CDO documents. The defendants have made inconsistent statements to plaintiffs about the existence and location of the CDO documents and have sent plaintiffs out on a "wild goose chase" despite that fact that plaintiffs have at all times had full access to all of the subject documents via a secure web site (EXHIBIT ONE).

## II THE SUBPOENA OF CHARLES D'ANGELO

The subpoena of Charles D'Angelo was issued, served, noticed, reissued, renoticed, scheduled, relocated, and rescheduled. The defendants at all times were served with these notices and were consulted and advised of the examination in the District of Eastern Virginia and then in the Southern District of New York.

In the Proceedings before the United States District Court for the Southern District of New York, the Charles D'Angelo's objections to Plaintiffs' subpoena that are based on the Cayman Island Confidentiality Act and Plaintiffs Motion to Compel Production of Charles D'Angelo and the subject C.D.O. documents have been assigned to Honorable Paul A. Engelmayer and are now scheduled to take place in the Southern District of New York on the 26th day of July 2012 at 10:00 a.m. A court order was issued by Judge Engelmayer that

3

rescheduled the examination pending submissions from Attorney Keith Miller on behalf the witness which have been filed *ex parte* with the Cayman Islands Court.

In this court, the Defendants have accused Attorney Alan R. Feuerstein of "clandestinely" scheduling a telephonic hearing with the Southern District of New York Court by not informing the Defendants that there was a proceeding scheduled for July 13, 2012.  Knowing that their allegations are meritless, the defendants still nave never filed anything with the Southern District of New York (but they did telephonically appear during the proceedings of July 13th 2012).

Counsel for the defendants have been working with and through Attorney Keith Miller, attorney for Charles D'Angelo Jr,. and have been in regular contact with him.  Attorney Miller has indicated that the witness is objecting to testimony and document production at the request of the defendants.  Attorney Feuerstein notified Miller of the hearing as he was instructed to do and based on Attorney Cooke's attendance at the hearing it is clear that Attorney Cooke had notice of the hearing through Attorney Miller.  Thus, the whole attack on Attorney Feuerstein is a smokescreen being used as an attempt to delay D'Angelo's deposition through the introduction of ad hominem attacks on Plaintiffs' counsel.

Plaintiff has responded to this allegation and now repeats, reiterates, and re-alleges and incorporates herein by reference the Plaintiffs Reply to the Response of the Defendants to Plaintiffs Informative Motion that is dated July 22, 2012 and Plaintiffs' opposition to defendants motion for a protective order dated July 22nd 2012.

It is important for the Court to be aware of the fact that the Defendants have never filed any appearance in the Southern District of New York miscellaneous action, they have filed no motion to quash and have never filed objections to the Plaintiffs duly issued and lawfully noticed subpoena of Charles D'Angelo.  It is as a result of the Defendants having "dropped the ball" that they now come before this Court, accuse counsel of failing to notify defendants of an

appearance. It is the defendants' own negligence in failing to object or move to quash and now defendants have decided to "forum shop" by filing the present motion to stay the deposition of Charles D'Angelo because they have failed to proceed before the United States District Court for the Southern District of New York as required.

The present motion of the Defendants must be denied. This motion should have been brought before the United States District Court for the Southern District of New York.

The Federal Rules are clear. A person seeking to quash or modify a subpoena must file the motion in the court that issued the subpoena. <u>Dynergy Midstream Servs. V Trammochem</u>, 451 F.3d 89,95 (2d. Cir. 2006); <u>SEC v CMKM Diamonds Inc.,</u> ___ F.3d___ (9th Cir. 2011)(No. 10-16384; 8-26-11), <u>Lefkoe v Jos. A. Banks Clothiers, Inc,</u> 577 F.3d 240, 246 (4th Cir. 2009);see F. R. Civ. P. 45(a)(2), (c)(3)(A); F.R.Civ.P. 26 (c)(1). Indeed, a court on timely motion **must** quash or modify a subpoena under certain circumstances (F. R. Civ. P. 45(c)(3)(A)). Defendants were silent and as of today still have never challenged the subpoena.

Plaintiff is compelled to advise the Court that the information and documentation that is the subject of the Subpoena Duces Tecum of Charles D'Angelo appears to have been intentionally hidden from the Plaintiffs despite the fact that the Plaintiffs have continuously sought this information formally, and through the depositions of Keithley Lake (another party who has not challenged personal jurisdiction), Earnest Joe Dean (former president of Westminster, Hope, and Turnberry – the investor of the CDOs) , and John Sylvia (Fidelity Insurance Company's former underwriter).

In a written agreement defendants also agreed to supply these very same documents [(and to transfer to Plaintiffs their alleged CDO interests), see EXHIBIT THREE attached to Plaintiff's informative motion to the court dated July 17th 2102 – document 336; and EXHIBIT TWO attached to defendants' response to plaintiffs' informative motion – document 339].

### III. THE DEPOSITION OF KEITHLEY LAKE

The deposition of Keithley Lake, a party to this action who has appeared without asserting a personal jurisdictional defense, was noticed for and was scheduled to produce documents and give testimony in Anguilla. W.I. in March of 2012. Defendants at that time again insisted that they did not have the subject CDO documents and that at the deposition of Lake that they would include their document production. The deposition was arranged at considerable expense and after much preparation including the travel and lodging of a stenographer/videographer who flew to Anguilla from Miami.

Defendants indicated that formal notice would not be needed and that the deponent and the documents would be produced (EXHIBIT TWO).

Plaintiffs, out of an abundance of caution, nevertheless prepared and served the defendants with their request for document production regarding the required documents that Plaintiff still seek (EXHIBIT THREE).

Defendants produced the witness at the deposition. Defendants failed to produce any of the requested documents and indicated that many of the documents Plaintiffs were requesting were located in Nevis. This was unfortunate given the fact that Plaintiffs deposed the manager of the Trust Company, Debra Tyrell, *who traveled from Anguilla to Nevis for the deposition without the requested documents*.

Despite Plaintiffs diligent continuous requests for these documents, defendants still have refused to supply these documents as promised after the deposition of Mr. Lake (EXHIBIT FOUR).

### IV. THE SUBPOENA OF ERNEST JOE DEAN

Ernest Joe Dean, the former president of Westminster, Hope, and Turnberry was subpoenaed to testify and deliver his documents to the plaintiffs at a video deposition at the Tampa Airport Marriott Conference Center. Mr. Dean appeared for this deposition with his

attorney, Mr. Titus On April 27th 2012 (EXHIBIT FIVE). Prior to the commencement of the deposition, Attorney Stewart Cooke, without previously making any motion to quash and without previously filing any objections, <u>and for the first time and with no notice whatsoever</u> objected to the deposition and the document productions of Mr. Dean.    Attorney    Cooke's objection to the testimony of Mr. Dean taking place again related to alleged confidential documents that were presented on a CD-ROM in the deposition room by the witness through his attorney. Mr. Cooke requested that Mr. Dean's testimony be rescheduled, that the subpoena be withdrawn, and that the subpoena be reissued to cause Mr. Dean to testify "confidentially" and produce his "confidential" documents "offshore."

As a courtesy to Attorney Cooke and the Defendants, the Plaintiffs reluctantly consented conditioned on Mr. Cookes' promise that the rescheduled Earnest Joe Dean testimony would be rescheduled promptly, that the documents would be provided promptly, and that all costs for the productions and relocation of the depositions, travel, lodging, and plaintiffs' similar expense would be borne by the defendants.

Mr. Dean's testimony has never been rescheduled by the Defendants, and the documents that were being tendered to the Plaintiffs at his deposition in Tampa Florida have never been turned over despite Plaintiffs' repeated requests for them (EXHIBIT SIX).

On June 11th, 2012 attorney Stewart Cooke tried to cause the subpoena that was served on Mr. Dean to be withdrawn. Mr. Cooke falsely indicating in writing to Mr. Dean's lawyer that Attorney Feuerstein had withdrawn the "Dean Subpoena" (EXHIBIT SEVEN).

Upon learning of Mr. Cooke's unethical improper attempt to cause the Dean subpoena and the document productions to be withdrawn, Attorney Feuerstein immediately objected and

advised Mr. Titus and Mr. Cooke that Mr. Cooke's instructions were "incorrect" (EXHIBIT EIGHT).

## V. THE SUBPOENA OF JOHN SYLVIA

The subpoenaed testimony of Mr. John Silvia took place in Port Jefferson, New York on Sunday, June 10, 2012. The subpoenas were properly issued, served, and noticed upon the Defendants (EXHIBIT NINE). The Defendants never filed any objections, nor did they file any motions to quash. In fact, the Defendants themselves sought to reschedule the Silvia deposition in Long Island so that it would take place at the same time that the D'Angelo deposition was to take place in the New York City area (EXHIBIT TEN). Because of the discovery Order issued by this Court, Plaintiffs refused to reschedule the Silvia deposition.

During the testimony of Mr. Silvia, the Defendants threatened Mr. Silvia. The Defendants told Mr. Silvia that if he took the stand and testified, that the Defendants would sue him. This threat made by defendants' Counsel directly to the witness caused the witness to refuse to testify and the threat was also based on the claim of "confidentiality." (Defendants indicated that Mr. Silvia had signed a "Confidentiality Agreement" and that if he testified as subpoenaed, that the defendants would sue him personally). This was another attempt to unethically abort the subpoenaed depositions of witnesses (EXHIBIT ELEVEN).

The Sylvia deposition did eventually take place after hours of negotiations. However, this entire episode could have been avoided had the defendants just filed the required F.R.Civ.P. 45 objections or a made timely motion to quash or modify the subject subpoena in advance.

## **VI. DISCUSSION**

Now that the Plaintiffs may have located some the documentation and evidence that is necessary in order to attempt to learn whether Plaintiffs' purchased CDOs or whether the Defendants simply converted $10 million of the Ventos' assets and lied about the CDO purchase, Defendants after negligently failing to move to quash or file objections, instead decided to go "judge shopping."

In addition to clearly enunciating to the Defendants their complaints regarding the collateralized debt obligations, and stating that Plaintiffs do not know if Defendants actually transferred to titled the C.D.O.'s or anything else of value to the Plaintiffs (see paragraph 164 of Plaintiffs Amended Rico Complaint) because the Plaintiffs have put the Defendants on notice that the transfer of $10 million of Plaintiffs' money is a material issue in the case, under F. R. Civ. P. 26, the Defendants continuing duty to supply and supplement information in their possession relative to this dispute required that the Defendants supply these documents and this information without Plaintiffs begging for them.

The Plaintiffs additionally have engaged in many discussions with defense counsel specifically requesting this information. Plaintiffs have supplied written discovery requests through e-mail communications with defense counsel requesting these documents. Defendants' counsel suggested that the discovery request be transmitted in this fashion and the Plaintiffs complied with their suggestions. However, Defendants refused to supply these documents and have even denied their existence. The Plaintiffs have located witnesses who claim to have some of these documents in their possession or under their control and Plaintiff is absolutely entitled to their production.

The real question for all of the participants to this lawsuit is what is the real reason that Defendants continue to refuse to produce these documents? What violations of law will they contain? The only thing the Defendants have produced were self generated "quickbooks" files showing internal accounting records of what they now claim happened to the Vento money. Missing are the formation documents of the alleged CDO pool, resolutions authorizing the purchase of these CDOs, prospectuses presented to the fund manager, company minutes showing the roster of investors and records of purchases and sales of the CDO fund shares and other documents that will authenticate Defendants' claims that they bought CDO funds with the Vento $10 million.[1] After making repeated and diligent requests to get these documents by Plaintiffs, Defendants have a choice: produce the documents or concede that the Ventos' money was stolen by the Defendants.

## VI. CONCLUSION

Based upon the foregoing, the Defendants Motion for a Stay of the Deposition of Charles D'Angelo must be denied. Defendants must proceed, if at all, with their applications before Hon. Paul A. Englemayer in the Southern District of New York.

---

[1] Note that D'Angelo previously told Plaintiffs that, as fund manager, he had no record of the Ventos ever purchasing any CDOs. It is possible that D'Angelo may be mistaken. It is possible that he may have some other explanation for the statement he previously made. Plaintiffs have been careful in their pleadings to say that Plaintiffs do not know to this date whether CDOs were purchased on the Plaintiffs' behalf. But the record is not good for the Defendants on this point to date and Plaintiffs are being very fair in reserving judgment until Plaintiffs can review all documentation on the issue. But the recalcitrance of Defendants to produce these documents and their attempt to keep D'Angelo from speaking further add to the suspicion concerning this transaction. In the Texas case, Plaintiffs learned that despite Defendants' representations to the contrary, the Plaintiffs never purchased an interest in the Noble Royalties and that Defendant Crithfield was the owner of the Royalties with promissory notes going to the people who put up the money (the Vento family was the largest victim in that transaction). With this kind of record, the production of the documents should be forthcoming and no efforts to hide the evidence should be countenanced. It is a dangerous game Defendants are playing.

DATED: St. Thomas, V.I.
         July 22nd 2012          Respectfully submitted,

         FEUERSTEIN & SMITH, LLP

         BY:/s/ Alan R. Feuerstein
         Alan R. Feuerstein, Esq.
         *Attorneys for Plaintiff*
         Office and Post Office Address
         475 Delaware Avenue
         Buffalo, New York 14202-1303
         (716) 856-9704 Telephone
         1-800-528-1113 Toll Free
         (716) 856-9707 Facsimile
         FSLLP@aol.com
         and
         Post Office Box 502008
         St. Thomas, USVI 00805-2008
         (340) 777-6325 Telephone/Facsimile
         (340) 690-3221 Voicemail
         FSLLPVI@aol.com


         **McCHAIN NISSMAN LAW GROUP LLC**

         BY: /s/ David Marshall Nissman
         David Marshall Nissman, Esq.
         *Attorneys for Plaintiffs*
         53A Company Street
         Christiansted, VI 00820
         (340) 719-0601 Telephone
         (340) 719-0602 Facsimile
         dnissman@yahoo.com
         david@mcchainnissman.com

**CERTIFICATE OF SERVICE**

I, Alan R. Feuerstein, do hereby certify that on the 22nd day of July 2012 I filed the foregoing Opposition with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record in this matter, and I have also forwarded a true copy of the foregoing by e-mail to the following:

Stewart Cooke, Esq.
scooke@cookelaw.net

Gordon Rhea, Esq.
grhea@rpwb.com

Rick Del Giudice, Esq.
R.DelGiudice@gozdel.com

Jeffery M. Heftman, Esq.
J.Heftman@gozdel.com

David Nissman, Esq.
david@mcchainnissman.com

Feuerstein & Smith, LLP
FSLLP@aol.com

Keith W. Miller, Esq.
Perkins Coie LLP
KeithMiller@perkinscoie.com

/s/ Alan R. Feuerstein
Alan R. Feuerstein, Esq.