# EXHIBIT D

## AGREEMENT TO ARBITRATE

This Agreement to Arbitrate (hereinafter referred to as "Arbitration Agreement") is hereby entered into as between the "Vento Entities" (identified in Exhibit "A") and the "Alliance Entities" (identified in Exhibit B) (collectively the "Parties"), who agree as follows:

WHEREAS the Parties have had six (6) separate cases that were or are pending as identified more fully by caption (Exhibit C) and located in: the State of Texas ("Action One"), the U.S. District Court of the Virgin Islands, District of St. Thomas and St. Johns ("Action Two," "Action Three," and "Action Four") and in the British West Indies Territory of Anguilla ("Action Five") and the British West Indies Territory of Nevis ("Action Six").

WHEREAS on September 26 and 27, 2011, the Parties personally and by and through their respective attorneys conducted a mediation and settlement conference in Miami, Florida. Said mediation resulted in the settlement and partial settlements in the six (6) separate cases as follows, as more fully described in the Parties' Release and Settlement Agreement and in the contemporaneously executed agreement entitled the Agreement Relating to Disputed Measure of Royalties ("Partial Settlement Agreement" and the "Disputed Measure of Royalty Agreement").

WHEREAS it is the Parties' desire and intent to arbitrate all issues that have not yet been settled by the foregoing settlement agreements;

WHEREAS the Parties expressly agree that any recourse by a Party to this Arbitration Agreement to any court proceeding will be incompatible with this Arbitration Agreement.

NOW THEREFORE, in consideration of the mutual covenants set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties do hereby covenant and agree as follows:

**I. AGREEMENT TO ARBITRATE AND APPOINTMENT OF ARBITATOR**

The Parties hereby agree to submit all issues remaining between and amongst them, including compliance with the terms of the Partial Settlement Agreement and the Disputed Measure of Royalty Agreement and agree to final binding arbitration pursuant to the terms of this Agreement. The Parties further agree that all such issues are arbitrable and agree to appoint Lawrence M. Watson, Jr. to serve as Arbitrator hereunder. The amount of and the responsibility for paying the fees and costs for the services of the Arbitrator will be allocated equally between and be paid by the Vento Entities and the Alliance Entities, 50/50. The Parties shall complete deposits and payments as required by the Arbitrator. The Parties also agree to an "Arb-Med" process, whereby Mr. Watson will act as a mediator to attempt to facilitate a mediated settlement of all issues between the Parties immediately following the conclusion of the Arbitration and prior to announcement of his award.

## II. PRESERVATIONS OF JURISDICTIONAL RIGHTS AND OBJECTIONS

It is expressly understood and agreed by the parties that nothing herein shall be deemed a waiver of any right to object to, nor a stipulation to submit to, the jurisdiction of any united states federal or state court. Further, participation in the arbitration process defined herein including pre-arbitration discovery and exchange of document submissions, shall also not be deemed a waiver of the right to object to, nor a stipulation to submit to the jurisdiction of any united states federal or state court. Notwithstanding the foregoing however in the event there is an arbitration award against any party, the prevailing party shall be entitled to convert that award to a final judgment and seek execution in any jurisdiction where the losing party's assets may be found.

## III. GOVERNING LAW

The Parties agree that the law of the U.S. Virgin Islands will be the "governing law" for purpose of this arbitration process. This arbitration procedure shall be governed by the Federal Arbitration Act.

## IV. DETERMINATION OF GEOGRAPHIC LOCALE

The Parties agree that the geographic locale for the hearing of the arbitration will be the British Virgin Islands.

## V. DETERMINATION OF DATE, TIME AND PLACE

The Parties will agree to jointly determine the date, time and place (specific office) for the Arbitration hearing, subject to the availability of the Arbitrator. The Parties agree to a minimum timeframe of seven trial days which timeframe can be mutually extended or reduced by the Parties by written agreement or at the sole election of the Arbitrator.

## VI. PRE-ARBITRATION CASE MANAGEMENT AND DISCOVERY

1. On or before fifteen (15) days of execution of this Arbitration Agreement, the Parties shall meet with the Arbitrator to agree upon a case management schedule. ("Schedule")  The Schedule shall include: dates for the exchange of Parties' position statements that will succinctly identify the causes of action and defenses that the Parties intend to arbitrate; the identification of documents to be exchanged; identification of all fact witnesses; identification of expert topics and experts (not necessarily at the same time); proposed deposition dates; the close of fact discovery; depositions, the exchange of expert reports; expert depositions; determination of jurisdiction over the Parties for the purpose of participating in discovery and/or the arbitration process, and the service of summary judgment motions. Any disputes over the terms of the Pre-Arbitration Case Management Schedule shall be submitted to the Arbitrator for resolution.

2. The Arbitrator may make modifications of this Schedule at any time for good cause,

and the Parties may request his decision on any discovery issues upon which they are unable to agree (provided that the Parties make a good faith effort to resolve or narrow the dispute). The Arbitrator may award legal fees and costs to the prevailing party at his discretion.

3. No other discovery will be allowed except by leave of the Arbitrator.

## VII. MOTIONS TO DISMISS AND SUMMARY JUDGMENTS

Several of the Alliance Entities have filed motions to dismiss on the basis of lack of personal jurisdiction and shall be entitled to raise objections to participation in the discovery process. The Parties agree that this Arbitration Agreement (and negotiations relating, directly to indirectly, to its drafting and execution) and the Arbitration are compromise offers and negotiations within the meaning of Federal Rules of Evidence 408, and as such are specially excluded to prove or disprove the validity of the claims of personal jurisdiction as to any one or all of the Parties or for impeachment.

## VIII. INTERIM MEASURES

1. The Arbitrator may take whatever interim measures he deems necessary, including injunctive relief.

2. The Parties agree to jointly seek a Stipulated Order to Arbitrate adopting this Arbitration Agreement and a stay of the current proceedings in the U.S. Virgin Islands case. In the event that the Court is unwilling to enter an Order to Arbitrate the Parties or otherwise fails to rule on the Motion, the Parties shall nonetheless pursue a stay of all actions.

## IX. HEARING AND SECURING OF WITNESSES

1. It is assumed that all witnesses under the control of a party will attend the hearing without the necessity of a subpoena upon request by the other party. If a subpoena is necessary, the Arbitrator will issue a subpoena for production of documents or for the attendance of a

witness, so long as the subpoena is requested ten days in advance of the hearing and notice is given to the other party. Convenience to the witness will be taken into account by the Arbitrator in determining the method and place of the testimony.

2. The Parties shall endeavor to commence the hearing of the Arbitration prior to December 2012, subject to the Arbitrator's availability. All relevant evidence shall be admissible subject to the discretion of the Arbitrator. The Federal Rules of Evidence will not strictly apply but will guide the Arbitrator in giving the evidence such weight as is appropriate. However, the applicable law relating to privileges and work product will apply, including but not limited to the attorney client privilege, the work product doctrine, spousal testimonial privileges, and the Confidential Relationships Acts of Nevis and Anguilla. The general order of these proceedings shall be similar to that used in courts, subject to the discretion of the Arbitrator. Hearings, as well as all other activities, will be convened privately. The Arbitrator shall administer an oath to each witness to tell the truth. Continuances may be granted by the Arbitrator only for good cause as determined by the discretion of the Arbitrator.

3. The Arbitrator may consider testimony by deposition, including excerpts submitted to the Arbitrator during the Arbitration Hearing, live and video testimony, and testimony by telephone or internet phone to the extent the Parties agree to take such testimony, post-hearing briefs, closing arguments, and requests to re-open a hearing if new relevant information appears.

4. The Parties agree to execute contemporaneous herewith a Confidentiality Agreement as attached hereto as Exhibit D and incorporated by reference.

## X. THE AWARD

The Arbitrator shall convene the Parties and their counsel to announce the award ("Award") promptly after the conclusion of the hearing and following the mediation phase. The

Award shall be based on the governing law as applied to the facts. The Award of the Arbitrator shall be binding upon the parties without any right of appeal. The Parties waive their right to a reasoned Award.

## XI. ENFORCEMENT OF THE AWARD

The Parties agree to be bound by the decision of the Arbitrator. The Parties further agree that the Award may be enforced in both U.S. and foreign jurisdictions, and the Parties agree that no procedural or substantive objections to enforcement will be raised by any Party to the Arbitration Award and the disputed measure of royalty agreement. The award may be enforced in any location where the losing party's assets can be found.

## XII. STATUTE OF LIMITATIONS

All applicable statutes of limitations shall be tolled for the purposes of this Arbitration no later than the day that the claim is initiated.

## XIII. MISCELLANEOUS

1. *Attorney's Fees.* In any action pertaining to the enforcement of this Arbitration Agreement, which dispute shall be heard in a court of law, the prevailing Party shall be entitled to recover reasonable attorneys' fees and costs as determined by the Arbitrator. Such entitlement and amount to be determined by the Arbitrator.
2. *Binding Authority.* The Party representatives signing below represent and warrant that they have full authority on behalf of their respective principals to enter into this binding Arbitration Agreement.
3. *Agreement not to enter into voluntary bankruptcy.* The Parties agree that no Party shall file a bankruptcy petition under Chapters 7 or 11 under the Federal Bankruptcy Code.
4. *Entire Agreement.* This document contains the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior discussions, agreements, and understandings, both oral and written, among the Parties with respect thereto except the Partial Settlement Agreement and/or the agreement relating to the disputed measure of royalties that resulted from a mediation between the parties and Mr. Larry Watson, mediator.

No inducement, warranty, or representation other than as set forth herein was made, offered, relied, or agreed upon. By entering into this Settlement Agreement, neither party intends to make, nor shall they be deemed to have made, any admission of any kind. The terms of this Arbitration Agreement and other provisions set forth in this agreement are contractual and not merely a recital.

5. *Execution.* This Arbitration Agreement shall be executed by the Parties in two counter-parts, each of which shall be deemed an original, and each of which together shall be deemed one and the same instrument. One executed original shall be distributed to each Party. Proof of execution, for purposes of expressing the Parties' agreement to the terms and provisions set forth herein, may be provided by electronic means (i.e. – scanned copy of original, executed signature) which, for all purposes, will suffice to bind the Parties and evidence their intent to be bound until such time as the executed, original signature pages have been exchanged. Both the original, executed signature page and any electronically transmitted signature page shall be provided by counsel for the executing party to counsel for the other party immediately upon receipt thereof.

6. *Cooperation.* In accordance herewith, the Parties agree to cooperate to carry out the terms of this Arbitration Agreement, including, but not limited to, executing and delivering the documents described herein as well as any documents required or reasonably necessary to carry out more fully the terms and provisions of this Arbitration Agreement.

IN ACCORDANCE HEREWITH, the Parties have executed this Arbitration Agreement on the dates shown on the respective signature pages. The date of upon which all Parties have fully executed this Agreement will be the "Effective Date" of this Agreement.

_[signature]_
For the Vento Entities
Title: _____
Date: 8/13/2012

_[signature]_
For the Alliance Entities
Title: _____
Date: 8/13/12