**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS & ST. JOHN**

**RICHARD VENTO, LANA VENTO, GAIL VENTO, RENEE VENTO, NICOLE MOLLISON,**

**Plaintiff,**

**v.**

**DUANE CRITHFIELD, KEITHLEY LAKE, ALLIANCE HOLDING CO., LTD., ALLIANCE ROYALTIES, LLC, ALLIANCE ROYALTIES, INC., WESTMINISTER, HOPE, & TURNBERRY, LLC, WESTMINISTER, HOPE, & TURNBERRY, LTD., FIRST FIDELITY TRUST, LTD., FIDELITY INSURANCE CO. LTD., OFFSHORE TRUST SERVICES, LLC, CITADEL INSURANCE CO., LTD., ABC COMPANIES, JAMES DUGGAN, DUGGAN BERTSCH, THOMAS HANDLER, HANDLER THAYER,LLP, STEVEN THAYER, AP HOLDINGS, LTD., CITADEL INSURANCE CO., LTD., FORTRESS FAMILY OFFICE GROUP, LLC, FOSTER & DUNHILL, LTD, WATERBERRY, LTD., AXA HOLDINGS, CO., BPS INTERNATIONAL, LLC, NEW HOPE HOLDINGS, LTD., OFFSHORE TRUST SERVICES, LLC., STEPHEN P. DONALDSON.**

**Defendants.**

**Civil No. 2009-174**

**ATTORNEYS:**

**Alan R. Feurstein, Esq.**
Feuerstein & Smith, LLP
Buffalo, NY
*For Richard Vento, Lana Vento, Gail Vento, Nicole Mollison, and Renee Vento,*

**Gordon C. Rhea, Esq.**
Richardson, Patrick, Westbrook & Brickman, LLC
Mount Plesant, SC
*For Duane Crithfield, Keithley Lake, Offshore Trust Services, LLC, Alliance Holding Co., Ltd., Alliance Royalties, Inc., Alliance Royalties LLC, AP Holdings, Ltd., Citadel Insurance Co., Ltd., Fidelity Insurance Co., Ltd., First Fidelity Trust, Ltd., New Hope Holdings, Ltd., Waterberry, Ltd., Westminster, Hope & Turnberry, Ltd.,*

**Andrew C. Simpson, Esq.**
Law Offices of Andrew Simpson
St. Croix, U.S.V.I.
*For BPS International LLC, James Duggan, Duggan Bertsch, Thomas Handler, Handler Thayer, LLP, Handler, Thayer & Duggan, LLC, and Steven Thayer,*

**Andrew L. Capdeville, Esq.**
Law Offices of Andrew L. Capdeville
St. Thomas, U.S.V.I.
*For Foster & Dunhill, Ltd., Fortress Family Office Group, LLC, and Stephen Donaldson.*

**ORDER**

**GÓMEZ, C.J.**

Before the Court are the motions by plaintiffs Richard Vento, Lana Vento, Gail Vento, Nicole Mollison, and Renee Vento, and defendants Handler, Thayer & Duggan, L.L.C., Handler Thayer, L.L.P., Duggan Bertsch, L.L.C., James Duggan, Steven Thayer, Thomas Handler and BPS International, L.L.C., to stay this action pending arbitration between the plaintiffs and certain defendants.

# I. FACTUAL AND PROCEDURAL BACKGROUND

In December, 2009, Richard Vento, Lana Vento, Gail Vento, Renee Vento, and Nicole Mollison (collectively the "plaintiffs") initiated this action against Duane Crithfield ("Crithfield"), Keithley Lake ("Lake"), and Stephen P. Donaldson ("Donaldson") individually and doing business as Alliance Holding Co., Ltd; Alliance Royalties, LLC, Alliance Royalties Inc.; Westminister Hope & Turnberry, LLC; Westminister, Hope & Turnberry, Ltd.; First Fidelity Trust, Ltd.; Fidelity Insurance Co., Ltd.; Foster & Dunhill, Ltd. and its successors in interest; Fortress Family Office Group, LLC; Offshore Trust Services, LLC; Citadel Insurance Co., Ltd.,; BPS International, LLC; Waterberry, Ltd.; AXA Holdings Co.; AP Holdings, Ltd.; John Doe Defendants;[1] and ABC Companies. The plaintiffs also bring this action against law firms Handler, Thayer, & Duggan, LLC ("HTD"); Handler Thayer, LLP; Duggan Bertsch, LLC; and the law firms' partners James M. Duggan ("Duggan"); Thomas J. Handler ("Handler"); and Steven J. Thayer ("Thayer").[2]

---

[1] The plaintiffs state that John Doe Defendants and ABC Companies are named as parties to this lawsuit and are included to name unknown, uncertain, and anonymous defendants whose identity and whose activity are presently unknown and whose identities shall be revealed through the discovery process during the litigation of this case. (Compl. ¶ 16)

[2] All of the defendants listed will be referred to collectively as the "defendants."

The first count of the complaint asserts violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*, against Crithfield, Donaldson, Handler, Thayer, and Duggan ("Count One"). The second count alleges violations of the Virgin Islands Criminally Influenced and Corrupt Organizations Act, V.I. CODE ANN. tit. 14, § 601 *et seq.*, against Lake, Handler, Thayer, and Duggan ("Count Two"). In Count Three, the plaintiffs allege a wrongful taking and wrongful detention against all of the defendants. Count Four asserts personal liability for conversion against Crithfield, Donaldson, Lake, Handler, Thayer, and Duggan. Count Five alleges conspiracy against all of the defendants. In Count Six, the plaintiffs allege fraud, deceit, and conspiracy to defraud against all of the defendants. Count Seven alleges breach of fiduciary duty against Crithfield, Donaldson, Lake, and BPS. Count Eight alleges aiding and abetting the breach of fiduciary duty against Crithfield, Donaldson, Lake, and BPS. In Count Nine the plaintiffs allege fraudulent conveyance of assets against all of the defendants.

The defendants have since filed various motions to dismiss for lack of personal jurisdiction. Those motions are still pending.

On August 13, 2012, the plaintiffs entered into an arbitration agreement with 21 of the defendants in this matter: Duane Crithfield, Stephen P. Donaldson, Keithley Lake, all individually and doing business as and associated with the following companies: Alliance Holding Co., Ltd., Alliance Royalties LLC, Alliance Royalties Inc., Westminster, Hope & Turnberry LLC, Westminster, Hope & Turnberry Ltd., First Fidelity Trust Ltd., Fidelity Insurance Co. Ltd., Foster & Dunhill Ltd. and its successors in interest Fortress Family Office Group LLC, Offshore Trust Services LLC, Citadel Insurance Co., Ltd., Waterberry Ltd., Axa Holdings Co., AP Holdings, Ltd., New Hope Holdings Ltd. (collectively referred to as the "Alliance Defendants").

On August 16, 2012, there were two motions filed. The first is a motion filed jointly by the plaintiffs and the Alliance Defendants to stay this action pending the resolution of the arbitration between the plaintiffs and the Alliance Defendants. They also move for appointment of an arbitrator. The second is a motion by Handler, Thayer & Duggan, L.L.C., Handler Thayer, L.L.P., Duggan Bertsch, L.L.C., James Duggan, Steven Thayer, Thomas Handler and BPS International, L.L.C., (collectively, "the Attorney Defendants"), to stay the claims not subject to arbitration, which are asserted against the Attorney Defendants,

pending arbitration of the claims asserted against the Alliance Defendants.

## II. DISCUSSION

The Federal Arbitration Act, 9 U.S.C.A. § 1, et seq., governs arbitration agreements (the "FAA"). According to the FAA,

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, *or an agreement in writing to submit to arbitration an existing controversy* arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C.A. § 2 (emphasis added).

The FAA provides for a stay of judicial proceedings under certain circumstances. It instructs that,

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

*Id.* at § 3.

The FAA also governs the appointment of arbitrators. It provides that,

> *If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed*; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

*Id.* at § 5 (emphasis added).

## III. ANALYSIS

### A. Motion to Stay Arbitrated Claims

The plaintiffs and the Alliance Defendants executed a written agreement to arbitrate all of their disputes in this action (the "Arbitration Agreement"). According to the Arbitration Agreement,

> The Parties hereby agree to submit all issues remaining between and amongst them, including compliance with the terms of the Partial Settlement Agreement and the Disputed Measure of Royalty Agreement and agree to final binding arbitration pursuant to the terms of this Agreement.

(Arbitration Agreement 2, ECF No. 361-4).

The plaintiffs and the Alliance Defendants seek an order staying the proceedings.

In ruling on a motion for a stay of legal proceedings pending arbitration, the "court must first determine whether

there is a written agreement to arbitrate." *In re Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754 (5th Cir. 1993) (internal quotations and citation omitted). Second, the court must determine "whether any of the issues raised are within the reach of that agreement." *Id.* (internal quotations and citation omitted). Third, "if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable." *Genesco, Inc. V. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 844 (2d Cir. 1987). "[F]ourth, if the Court concludes that some, but not all of the claims in the case are arbitrable, it must then determine whether to stay the balance of the proceedings pending arbitration." *Id.*

If a court answers each of those questions in the affirmative, the FAA mandates that the court enter a stay. 9 U.S.C.A. § 3 (". . . [the court] shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement...") Federal courts applying the FAA have consistently held that the stay of proceedings under such circumstances is mandatory. *See, e.g.*, *Houlihan v. Offerman & Co., Inc.*, 31 F.3d 692, 695 (8th Cir. 1994) (holding that a proceeding must be stayed once the court determines that the dispute falls within a valid arbitration agreement).

The scope of the FAA is not limited "to cases in which a party moving for a stay has made a pre-suit demand for arbitration." *General Guaranty Ins. Co. v. New Orleans General Agency, Inc.*, 427 F.2d 924, 928 (5th Cir. 1970). The FAA allows parties to agree to arbitrate both future claims and existing claims. *See generally Lawson Fabrics, Inc. v. Akzona, Inc.*, 355 F. Supp. 1146, 1149-50 (S.D.N.Y. 1973) (". . . the main objection which arises where future controversies are involved [is] . . . that a party is signing away an unknown claim or right . . ." whereas, here, both parties "have the opportunity to know exactly what they are agreeing to arbitrate, and it is less likely that the respective bargaining positions will be influenced by factors not related to the existing controversy."), *aff'd* 486 F.2d 1394 (2d Cir. 1973) (affirming the trial court's conclusion that the action would be stayed pending arbitration where the plaintiffs agreed to arbitrate not a future controversy but an existing one, which was a recognized exception to the general prohibition against arbitrating public rights).

Here, the plaintiffs and the Alliance Defendants have submitted to the Court a document which purports to be an arbitration agreement. Upon review by the Court, it is evident that the document is indeed an agreement between the plaintiffs

and the Alliance Defendants to arbitrate. As such, the first factor weighs in favor of granting a stay.

The Arbitration Agreement covers all of the claims remaining between the plaintiffs and the Alliance Defendants. The plaintiffs' claims in this matter asserted against the Alliance Defendants have yet to be settled. As such, they are within the reach of the Arbitration Agreement. Thus, the second factor weighs in favor of granting a stay.

Courts have held that the civil claims brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*, are arbitrable. *See, e.g., Shearson/ American Exp., Inc. v. McMahon*, 482 U.S. 220, 242 (1987) ("In sum, we find no basis for concluding that Congress intended to prevent enforcement of agreements to arbitrate RICO claims.") The only federal statutory claim asserted here is one under RICO. As such, the third factor weighs in favor of granting a stay.

**B. Motion to Appoint an Arbitrator**

The plaintiffs and the Alliance Defendants seek an order appointing an arbitrator.

Under the FAA, if the parties' arbitration agreement specifies a method for the appointment of an arbitrator, that procedure should be followed. 9 U.S.C. at § 5.

In the Arbitration Agreement the parties agreed to appoint Lawrence M. Watson, Jr. as their arbitrator. Specifically, the parties provide in the Arbitration Agreement that

> The Parties further agree that all such issues are arbitrable and agree to appoint Lawrence M. Watson, Jr. to serve as Arbitrator hereunder. The amount of and the responsibility for paying the fees and costs for the services of the Arbitrator will be allocated equally between and be paid by the Vento Entities and the Alliance Entities, 50/50. The Parties shall complete deposits and payments as required by the Arbitrator. The Parties also agreed to an "Arb-Med" process, whereby Mr. Watson will act as a mediator to attempt to facilitate a mediated settlement of all issues between the Parties immediately following the conclusion of the Arbitration and prior to the announcement of his award.

(Arbitration Agreement 2, ECF No. 361-4).

The Arbitration Agreement specifies a method for the appointment of an arbitrator: the parties mutual assent. As such, the Court finds as moot the motion to appoint Lawrence M. Watson, Jr., to serve as arbitrator under the Arbitration Agreement.

**C. Motion to Stay Claims Not Subject to Arbitration**

The Attorney Defendants move for a stay of the claims against them which are not subject to arbitration.

The decision to stay the litigation of claims not subject to arbitration, pending the outcome of arbitration, is one left to the sound discretion of the court. *See generally Barrowclough v. Kidder, Peabody & Co., Inc.*, 752 F.2d 923, 938 (3d Cir. 1985) (". . . the district court, as a matter of its discretion to

control its docket may stay litigation among the non-arbitrating parties pending the outcome of the arbitration") (internal citations omitted). In deciding whether to grant a discretionary stay, courts should consider judicial economy, avoidance of confusion, and possible inconsistent results. *See generally American Home Assur. Co. v. Vecco Concrete Const. of Virginia*, 629 F.2d 961 (4th Cir. 1980) (granting a stay of claims not subject to arbitration where there were questions of fact common to all claims pending in the matter which were likely to be settled during the arbitration and considerations of judicial economy, avoidance of confusion, and possible inconsistent results weighed in favor of staying the entire multiparty action).

Here, the plaintiffs have elected to submit their entire case against the Alliance Defendants to binding arbitration. The first amended complaint alleges claims against both the Attorney Defendants and the Alliance Defendants for violations of RICO (Count One); violations of the Virgin Islands Criminally Influenced Corrupt Organizations Act ("CICO") (Count Two); wrongful taking and wrongful detention (Count Three); conversion (Count Four); conspiracy (Count Five); fraud, deceit and conspiracy to defraud (Count Six); breach of fiduciary duty

(Count Seven); aiding and abetting a breach of fiduciary duty (Count Eight); and fraudulent conveyance (Count Nine).

The plaintiffs' claims against the Alliance Defendants and the Attorney Defendants share the same factual and legal basis. For instance, the resolution of claims against each group of defendants will likely include the apportionment of responsibility of each party for the cause of any alleged damages. In light of the existence of common questions of fact, the claims not subject to arbitration will be stayed pending a resolution of the arbitrable claims. *Cf. Contracting NW, Inc. v. City of Fredericksburg*, 713 F.2d 382, 387 (8th Cir. 1983) (finding it sensible to stay litigation against non-arbitrating parties "when the third party litigation involves common questions of fact that are within the scope of the arbitration agreement.")

A stay of the claims against the Attorney Defendants is also necessary to avoid the prospect of inconsistent results. In the absence of a stay, the plaintiffs will be concurrently pursuing identical claims in two different forums. There is a possibility of inconsistent findings of fact and law. The arbitration's resolution of common questions of fact and law concerning the alleged existence of a racketeering enterprise, the continuity of the alleged enterprise, the management and operation of the

alleged enterprise, the calculation of damages, if any, and the causal relationship between any damages and alleged conduct are all issues which may be ruled upon in the pending arbitration and may simplify the remaining claims against the Attorney Defendants. As such, the arbitration may affect the remaining claims against the Attorney Defendants.

The final factor is that of judicial economy. The Court may stay claims not subject to arbitration "pursuant to the power inherent in every court to control the disposition of cases on its docket with economy of time and effort for itself, for counsel and for litigants." *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997) (internal quotations omitted). A stay could help to avoid duplication of efforts on the part of the witnesses, the parties, and the Court. Accordingly, the Court will stay this matter in its entirety.

## IV. CONCLUSION

The above premises considered, it is hereby

**ORDERED** that the joint motion by the plaintiffs and the Alliance Defendants to stay this matter pending arbitration is **GRANTED**; it is further

**ORDERED** that the joint motion by the plaintiffs and the Alliance Defendants to appoint Lawrence M. Watson, Jr., to serve

as arbitrator under the Arbitration Agreement is **DENIED as MOOT;** it is further

**ORDERED** that the motion by the Attorney Defendants to stay the claims against them pending arbitration between the plaintiffs and the Alliance Defendants is **GRANTED**; it is further

**ORDERED** that the Clerk of the Court shall designate this action as a suspense matter; it is further

**ORDERED** that this matter shall be removed from the active trial docket; it is further

**ORDERED** that this matter shall be included in the Civil Suspense Docket; it is further

**ORDERED** that the parties shall advise the Court when the matter before an arbitrator is concluded; it is further

**ORDERED** that the case be restored to the trial docket when the action is in a status so that it may proceed to final disposition; and it is further

**ORDERED** that this order shall not prejudice the rights of the parties to this litigation.

s/______________________________
CURTIS V. GÓMEZ
Chief Judge