DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

|  |  |  |
|---|---|---|
| RICHARD VENTO, LANA VENTO, GAIL VENTO, RENEE VENTO, NICOLE MOLLISON, | ) ) ) ) ) | |
| | ) | Civil No. 2009-174 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DUANE CRITHFIELD, KEITHLEY LAKE, ALLIANCE HOLDING CO., LTD., ALLIANCE ROYALTIES, LLC, ALLIANCE ROYALTIES, INC., WESTMINISTER, HOPE, & TURNBERRY, LLC, WESTMINISTER, HOPE, & TURNBERRY, LTD., FIRST FIDELITY TRUST, LTD., FIDELITY INSURANCE CO. LTD., OFFSHORE TRUST SERVICES, LLC, CITADEL INSURANCE CO., LTD., ABC COMPANIES, JAMES DUGGAN, DUGGAN BERTSCH, THOMAS HANDLER, HANDLER THAYER,LLP, STEVEN THAYER, AP HOLDINGS, LTD., CITADEL INSURANCE CO., LTD., FORTRESS FAMILY OFFICE GROUP, LLC, FOSTER & DUNHILL, LTD, WATERBERRY, LTD., AXA HOLDINGS, CO., BPS INTERNATIONAL, LLC, NEW HOPE HOLDINGS, LTD., OFFSHORE TRUST SERVICES, LLC., STEPHEN P. DONALDSON, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

APPEARANCES:

Alan R. Feuerstein, Esq.
Feuerstein & Smith, LLP
Buffalo, NY

*Vento, et al. v. Crithfield, et al.*
Civil No. 2009-174
Memorandum Opinion
Page 2

> *For Richard Vento, Lana Vento, Gail Vento, Nicole Mollison,*
> *and Renee Vento,*

**John H. Benham, Esq.**
Benham & Chan
St. Thomas, VI
> *For Duane Crithfield, Keithley Lake, Offshore Trust*
> *Services, LLC, Alliance Holding Co., Ltd., Alliance*
> *Royalties, Inc., Alliance Royalties LLC, AP Holdings, Ltd.,*
> *Citadel Insurance Co., Ltd., Fidelity Insurance Co., Ltd.,*
> *First Fidelity Trust, Ltd., Westminster, Hope & Turnberry,*
> *Ltd,*

**Gordon C. Rhea, Esq.**
Richardson, Patrick, Westbrook & Brickman, LLC
Mount Pleasant, SC
> *For New Hope Holdings, Ltd., Waterberry, Ltd.,*

**Andrew C. Simpson, Esq.**
Law Offices of Andrew Simpson
St. Croix, VI
> *For BPS International LLC, James Duggan, Duggan Bertsch,*
> *Thomas Handler, Handler Thayer, LLP, Handler, Thayer &*
> *Duggan, LLC, and Steven Thayer,*

**Andrew L. Capdeville, Esq.**
Law Offices of Andrew L. Capdeville
St. Thomas, VI
> *For Foster & Dunhill, Ltd., Fortress Family Office Group,*
> *LLC, and Stephen Donaldson.*

## MEMORANDUM OPINION

**GÓMEZ, J.**

Before the Court is the motion of Duane Crithfield;

Keithley Lake; Keithley Holding Co., Ltd.; Alliance Royalties,

Inc.; Fidelity Insurance Co., Ltd.; First Fidelity Trust, Ltd.;

and Westminster, Hope, & Turnberry, Ltd. (the "Alliance

Movants") for reconsideration of the Court's denial of their

motion to vacate the Arbitrator's Amended Interim Award on

Breach of Settlement Agreement and Amended Final Award on Breach

of Settlement Agreement. Also before the Court is the motion of

Richard Vento, Lana Vento, Gail Vento, Renee Vento, and Nicole

Mollison to lift the stay in this case and confirm the

arbitration awards.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Richard Vento, Lana Vento, Gail Vento, Renee Vento, and

Nicole Mollison (collectively the "Ventos") filed this action on

December 4, 2009.

On March 9, 2014, the Ventos filed a First Amended

Complaint. The First Amended Complaint asserts claims against

Duane Crithfield; Stephen P. Donaldson; and Keithley Lake, all

individually and doing business as and associated with the

following companies: Alliance Holding Co., Ltd.; Alliance

Royalties LLC; Alliance Royalties INC.; Westminster, Hope &

Turnberry LLC; Westminster, Hope & Turnberry Ltd.; First

Fidelity Trust Ltd.; Fidelity Insurance Co. Ltd.; Foster &

Dunhill Ltd. and its successors in interest; Fortress Family

Office Group LLC; Offshore Trust Services LLC; Citadel Insurance

Co., Ltd.; BPS International LLC; Waterberry Ltd.; AXA Holdings

*Vento, et al. v. Crithfield, et al.*
Civil No. 2009-174
Memorandum Opinion
Page 4

Co.; AP Holdings, Ltd.; New Hope Holdings Ltd.; John Doe

Defendants; ABC Companies; all of which are also named as party

defendants; Handler Thayer & Duggan, L.L.C. (HTD); Handler

Thayer, L.L.P; Duggan Bertsch, L.L.C; James M. Duggan; Thomas J.

Handler; and Steven J. Thayer.

Count One of the First Amended Complaint asserts violations

of the Racketeer Influenced and Corrupt Organizations Act

("RICO"), 18 U.S.C. § 1961 *et seq*, against Duane Crithfield

("Crithfield"); Stephen P. Donaldson ("Donaldson"); Keithley

Lake ("Lake"); Thomas J. Handler ("Handler"); Steven J. Thayer

("Thayer"); and James M. Duggan ("Duggan"). Count Two alleges

violations of the Virgin Islands Criminally Influenced and

Corrupt Organizations Act, V.I. Code Ann. tit. 14, § 601 *et

seq.*, against Crithfield; Donaldson; Lake; Handler; Thayer; and

Duggan. Count Three alleges a wrongful taking and wrongful

detention claim against all of the defendants. Count Four

asserts personal liability for conversion against Crithfield;

Donaldson; Lake; Handler; Thayer; and Duggan. Count Five alleges

conspiracy against all of the defendants. Count Six alleges

fraud, deceit, and conspiracy to defraud against all of the

defendants. Count Seven alleges breach of fiduciary duty against

Crithfield; Donaldson; Lake; and BPS International, LLC ("BPS").

Count Eight alleges aiding and abetting the breach of fiduciary

*Vento, et al. v. Crithfield, et al.*
Civil No. 2009-174
Memorandum Opinion
Page 5

duty against Crithfield; Donaldson; Lake; and BPS. Count Nine

alleges fraudulent conveyance of assets against all of the

defendants.

In general, the Ventos allege that the defendants engaged

in an elaborate scheme to induce the Ventos to transfer control

of over $30 million of family assets to various irrevocable,

offshore trusts in Nevis, W.I.  These trusts were established,

ostensibly, for estate planning, asset protection, and tax

purposes.  It is alleged that certain of the defendants, who

controlled these trusts, used trust funds to purchase financial

products and services from related entities or entities those

defendants controlled, all the while charging excessive and

unauthorized fees and commissions, resulting in damages to the

Ventos.[1]

## 1.   The Settlement Agreement

On September 26 and 27, 2011, the parties participated in a

mediation and settlement conference in Miami, Florida.  That

---

[1]      As part of this alleged scheme, certain of the individual defendants
targeted wealthy families, like the Ventos, by marketing wealth management
seminars in the Bahamas and elsewhere, which promoted complex tax mitigation
and asset protection strategies. To achieve these advantages, however, the
Ventos and others, allegedly were required to cede control over their assets
to offshore trusts, established in each of their names, which were controlled
by certain of the defendants. (*See, e.g.,* Opposition to Motion to Dismiss for
Lack of Personal Jurisdiction, ECF No. 285, at 2-4.) It is alleged that once
these assets were transferred, they became "irretrievably trapped in
elaborate, illiquid, offshore arrangements," and then "slowly [bled] dry by
charging excessive, unauthorized, and undisclosed commissions and fees." (*Id.*
at 3.)

*Vento, et al. v. Crithfield, et al.*
Civil No. 2009-174
Memorandum Opinion
Page 6

mediation resulted in a Settlement Agreement, effective

September 27, 2011 ("Settlement Agreement"). (ECF No. 390-27.)

The Ventos entered into the Settlement Agreement with the

following defendants: Duane Crithfield; Stephen P. Donaldson;

Keithley Lake; Alliance Holding Co., Ltd.; Alliance Royalties

LLC; Alliance Royalties Inc.; Westminster, Hope & Turnberry

Ltd.; First Fidelity Trust Ltd.; Fidelity Insurance Co. Ltd.;

Fidelity Management, Ltd.; First Fidelity Trust Company, Ltd.;

Foster & Dunhill Ltd. and its affiliated GBI, Offshore Trust

Services, Inc.; DMM, LLC; WHT CDO, LLC; and all additional

affiliates, subsidiaries, and entities related to or owned by

Alliance Holding Company, Ltd. (collectively the "Settling

Alliance Entities").

Among other things, the Settlement Agreement settled or

partially settled other disputes between and among some of the

parties (and others not named in this action) in this and other

jurisdictions.  The Ventos and the Settling Alliance Entities

agreed to dismiss a related case in this Court, *Silly Point,*

*Ltd, et al. v. Richard Vento, et al.*, Civil No. 3:11-CV-0086

(complaint filed Aug. 4, 2011), as well as related cases in

Anguilla and Nevis. (Settlement Agreement, ECF No. 427-1, at ¶¶

2.3, 2.4, 4.7.) They also agreed to dismiss certain claims

asserted in a Texas case, once certain conditions were met.

*Vento, et al. v. Crithfield, et al.*
Civil No. 2009-174
Memorandum Opinion
Page 7

(*Id.* at ¶ 2.2 (referring to *Compass Royalty Management, LLC v. Alliance Royalties, LLC et al.,* Cause No. CC-09-02916-B, in Dallas County Court at Law No. 5.)

The Settlement Agreement did not settle the claims raised in this case. (*Id.* at ¶ 2.5.)  It also did not affect claims raised in another related action, also pending in this Court, *Vento, et al. v. Handler, Thayer & Duggan, LLC, et al*, Civil No. 3:09-CV-0155 (complaint filed Nov. 2, 2009).  The parties dismissed that related action on July 17, 2014.

## 2.    The Arbitration Agreement

On August 13, 2012, the Ventos entered into an Arbitration Agreement with the following defendants: Duane Crithfield; Stephen P. Donaldson; Keithley Lake; Alliance Holding Co., Ltd.; Alliance Royalties LLC; Alliance Royalties Inc.; Westminster, Hope & Turnberry LLC; Westminster, Hope & Turnberry Ltd.; First Fidelity Trust Ltd.; Fidelity Insurance Co. Ltd.; Foster & Dunhill Ltd. and its successors in interest; Fortress Family Office Group LLC; Offshore Trust Services LLC; Citadel Insurance Co., Ltd.; Waterberry Ltd.; AXA Holdings Co.; AP Holdings, Ltd.; and New Hope Holdings Ltd. (collectively the "Alliance Defendants").

The Ventos and the Alliance Defendants agreed "to submit all issues remaining between and amongst them, including

*Vento, et al. v. Crithfield, et al.*
Civil No. 2009-174
Memorandum Opinion
Page 8

compliance with the terms of the Partial Settlement Agreement .

. . . to final binding arbitration." (Arbitration Agreement, ECF

No. 427-2, at 3.) The Arbitration Agreement appointed Lawrence

M. Watson, Jr. as arbitrator. It also provided, "The Award of

the Arbitrator shall be binding upon the parties without any

right of appeal. The Parties waive their right to a reasoned

Award." (*Id.* at 7.) The parties to the Arbitration Agreement

further agreed to be "bound by the decision of the Arbitrator"

and that "no procedural or substantive objections to enforcement

will be raised by any Party to the Arbitration Award . . . ."

(*Id.*)

### 3.   The Stay Order

Pursuant to the Arbitration Agreement,[2] the Ventos and the

Alliance Defendants jointly moved to stay this action pending

arbitration. The non-arbitrating defendants, Handler, Thayer &

Duggan, L.L.C.; Handler Thayer, L.L.P.; Duggan Bertsch, L.L.C.;

James Duggan; Steven Thayer; Thomas Handler; and BPS

International, L.L.C., (collectively "the Attorney Defendants")[3]

also moved to stay those claims against them pending arbitration

of the claims asserted against the Alliance Defendants.

---

[2]    Arbitration Agreement, ECF No. 427-2, at 5.
[3]    The Ventos later dismissed their claims against the Attorney
Defendants. (*See* ECF No. 415.)

*Vento, et al. v. Crithfield, et al.*
Civil No. 2009-174
Memorandum Opinion
Page 9

On August 29, 2012, the Court entered an Order staying this matter in its entirety pending arbitration ("Stay Order"). (*See* ECF No. 364.)  The Stay Order removed this case from the active trial docket, placed it on the civil suspense docket, and ordered that the parties advise the Court "when the matter before an arbitrator is *concluded*." (Stay Order, ECF No. 364, at 15 (emphasis added)).

Thereafter, arbitration began on July 22, 2013. Several days of hearings followed.

**4.   Phase I**

The arbitrator decided issues presented by the parties in different phases. On August 23, 2013, the arbitrator issued a ruling labeled as "Final Award" (the "Phase I Award").  The Phase I Award found for defendants Foster & Dunhill Ltd.; Stephen P. Donaldson; Fortress Family Office Group, LLC; Citadel Insurance Co., Ltd.; AP Holdings, Ltd.; New Hope Holdings   , Ltd. (collectively the "Non-liable Alliance Defendants") and against the Ventos.[4] The arbitrator made an award of "0" as to the claims between and among the Non-Liable Alliance Defendants and the Ventos. (Phase I Award, ECF No. 376-4, at 1.)

---

[4]    The arbitrator found against the "Vento Entities," which included the Ventos and other entities not parties to this action.

*Vento, et al. v. Crithfield, et al.*
Civil No. 2009-174
Memorandum Opinion
Page 10

The Phase I Award also addressed the claims between the
Ventos and Alliance Holding Co. Ltd; Alliance Royalties, LLC.;
Alliance Royalties, Inc.; Westminster, Hope and Turnberry, LLC.;
Westminster, Hope and Turnberry Ltd.; Waterberry, Ltd.; Offshore
Trust Services, LLC.; AXA Holdings Co.; First Fidelity Trust
Ltd.; Fidelity Insurance Co. Ltd.; Duane Crithfield,
individually; and Keithley Lake, individually (the "Liable
Alliance Defendants").  In the Phase I Award, the arbitrator
found the Liable Alliance Defendants jointly and severally
liable to the Ventos and entered an award of $7,419,000. (*Id.* at
2.)

On October 15, 2013, the Ventos filed conflicting motions
with the arbitrator and this Court.  Before this Court, they
moved for an order enforcing the judgment and confirming the
Phase I Award.  Before the arbitrator, they asked that the Phase
I Award be modified.[5] (*Compare* Motion to Enforce Judgment, ECF
No. 375, *with* Motion to Correct, Modify and Amend Arbitrator's
Final Award, ECF No. 376-5.)  In response, the Liable Alliance
Defendants moved to enforce the Stay Order, on the ground that

---

[5]      The Motion to Enforce Judgment appeared to be internally inconsistent.
In one paragraph it admitted that "Plaintiffs have filed a motion to Correct,
Modify and Amend the [F]inal [A]ward." In the next, it argued that "there are
no grounds for modifying, correcting, or vacating the award." (Memorandum in
Support of Motion to Enforce Judgment, ECF No. 376, at 5.)

*Vento, et al. v. Crithfield, et al.*
Civil No. 2009-174
Memorandum Opinion
Page 11

arbitration was not complete.  The Liable Alliance Defendants
also filed a motion for post-award relief with the arbitrator.

### 5.   Phase II

On November 25, 2013, the arbitrator ruled on these post-
award motions and issued an award captioned as the "Amended
Final Award" (the "Phase II Award").  The Phase II Award
included some of the modifications sought by the Ventos. It also
retained the arbitrator's findings as to liability and damages
against the Liable Alliance Defendants. (*See generally* Phase II
Award, ECF No. 390-26.)

On November 27, 2013, the Ventos moved this Court to
confirm and enforce the Phase II Award. (*See* ECF No. 389.)
However, in a supplemental motion and other pleadings before the
arbitrator, the Ventos sought an "additional ruling," distinct
from the Phase II Award, to address issues of alleged breaches
of the Settlement Agreement. (*See* Supplementary Motion, ECF No.
390-9, at 8.) On December 10, 2013, the Ventos filed an
additional claim with the arbitrator charging the Alliance
Defendants' with breach of the settlement agreement.

### 6.   Phase III: Breach of Settlement Claims

The Alliance Defendants objected to the Ventos's request
for further arbitration.  They filed a motion to dismiss with
the arbitrator, arguing that he lacked jurisdiction to make

*Vento, et al. v. Crithfield, et al.*
Civil No. 2009-174
Memorandum Opinion
Page 12

additional rulings or consider additional claims because the

Phase II Award concluded arbitration.  (*See* ECF No. 418-5.) In

an apparent reversal of the position taken in this Court, the

Ventos argued to the arbitrator that arbitration was not yet

finished, as there were still additional rulings to be made.

On January 3, 2014, the arbitrator agreed with the Ventos

and found that arbitration was not yet concluded. (*See* ECF No.

418-6.)

The Alliance Defendants then filed a motion to reconsider

the Arbitrator's January 3, 2014 Order.  The arbitrator denied

that motion. (*See* ECF No. 418-8.)  After that adverse ruling,

the Alliance Defendants "reluctantly concluded that the

arbitrator would not listen to reason," and withdrew from

arbitration and any further participation in arbitration

proceedings. (*See* Motion to Vacate, ECF No. 418, at 3; *see also*

Letter dated January 21, 2014 from Gordon Rhea to Lawrence

Watson, ECF No. 418-9 (informing arbitrator that Alliance

Defendants were not obligated to pay for services rendered in

any further arbitration proceedings, as arbitration was

concluded by the Phase II Award).)

The arbitrator continued to hold hearings and enter awards

nonetheless.  He entered an Interim Award on Breach of

*Vento, et al. v. Crithfield, et al.*
Civil No. 2009-174
Memorandum Opinion
Page 13

Settlement Agreement on May 1, 2014; a Final Award on Breach of
Settlement Agreement on May 29, 2014; an Amended Interim Award
on Breach of Settlement Agreement on July 22, 2014; and an
Amended Final Award on Breach of Settlement Agreement on July
22, 2014.

The Amended Interim Award found Alliance Holding Company,
Ltd.; Alliance Royalties, LLC; Alliance Royalties, Inc.;
Fidelity Insurance Company, Ltd.; First Fidelity Trust, Ltd.;
First Fidelity Trust Company, Ltd.; Foster & Dunhill, Ltd.;
Westminster Hope & Turnberry, Ltd.; Offshore Trust Services,
Inc.; Duane Crithfield, individually; Keithley Lake,
individually; and Stephen P. Donaldson, individually
(collectively the "Liable Settlement Parties"), jointly and
severally liable to the Ventos and awarded an additional
$1,375,040.33 to the Ventos. (ECF No. 427-42.) The Amended Final
Award found the Liable Settlement Parties jointly and severally
liable to the Ventos and awarded an additional $919,199.91 to
the Ventos. (ECF No. 427-43.)[6]

On September 30, 2014, the Court issued an order upholding

---

[6] Both of these awards were also awarded against Fidelity Management, Ltd.;
DMM, LLC; WHT CDO, LLC; and "[a]ll additional affiliates, subsidiaries, and
entities related to or owned by Alliance Holding Company, Ltd." None of these
parties are present in this action.

*Vento, et al. v. Crithfield, et al.*
Civil No. 2009-174
Memorandum Opinion
Page 14

the stay and denying without prejudice various motions that
sought to confirm or vacate various arbitration awards. The
Court also ordered the parties to file a stipulation or report
from the arbitrator on whether arbitration had concluded.

Thereafter, the Ventos filed a report from the arbitrator.
In that report, the arbitrator informed the Court that
arbitration had concluded. The last award was issued on July 22,
2014. On July 31, 2014, the Alliance Movants filed a motion to
vacate the July 22, 2014, Amended Interim Award on Breach of
Settlement Agreement and July 22, 2014, Amended Final Award on
Breach of Settlement Agreement (the "motion to vacate"). (ECF
No. 417.)

The Ventos then moved the Court to reopen the case and
confirm the arbitration awards (the "motion to enforce" or
"motion to confirm"). (ECF No. 426.)

On March 31, 2015, the Court denied the motion to vacate.
(ECF No. 434.) The Alliance Movants filed an unopposed motion to
extend the time to file a motion for reconsideration until May
5, 2015. On May 5, 2015, the Alliance Movant filed a motion for
reconsideration asking the Court to reconsider its order denying
the motion to vacate. (ECF No. 436.)

*Vento, et al. v. Crithfield, et al.*
Civil No. 2009-174
Memorandum Opinion
Page 15

## II.  <u>ANALYSIS</u>

### A. Extension of Time to File Motion for Reconsideration

Local Rule of Civil Procedure 7.3 ("Rule 7.3") governs

motions for reconsideration. *See* LRCi 7.3. Rule 7.3 provides

that

> A party may file a motion asking the Court to
> reconsider its order or decision. Such motion
> shall be filed within fourteen (14) days after the
> entry of the order or decision unless the time is
> extended by the Court. Extensions will only be
> granted for good cause shown. A motion to
> reconsider shall be based on:
>
> 1. intervening change in controlling law;
>
> 2. availability of new evidence, or;
>
> 3. the need to correct clear error or prevent
> manifest injustice.

*Id.*

The Alliance Movant's motion to dismiss was filed more than

14 days after the Court issued its order. However, before the

fourteen days expired, the Alliance Movants filed a motion

seeking an extension of time to file the motion for

reconsideration. In that motion, the Alliance Movants assert

that there is good cause for an extension of time "because of

the need to obtain additional information regarding parallel

litigation ongoing in the state courts of Texas regarding the

same arbitration awards at issue in this action." (ECF No. 435,

at 2.) The Court need not determine whether that constitutes

*Vento, et al. v. Crithfield, et al.*
Civil No. 2009-174
Memorandum Opinion
Page 16

good cause because, even assuming *arguendo* that the Court were
to grant the extension, the Court would deny the motion for
reconsideration for the reasons stated below.

## B. Motion for Reconsideration

The defendants moved to vacate the arbitration agreement on
several grounds. They argue that the Ventos assigned their
rights under the Settlement Agreement to DLNGR NR LLP ("DLNGR")
and were not entitled to arbitrate any breach of the Settlement
Agreement. The Court denied the motion to vacate.

The defendants now argue that the Court should reconsider
its order and vacate the arbitration judgement because
"[f]urther developments in the Texas interpleader litigation
demonstrate that the Vento Plaintiffs assigned their interests
in the Settlement Agreement to DLNGR NR LLP but have refused to
divulge any information relating to the assignment." (ECF No.
437, at 2.) They also assert that the "Court erred in its
decision that it was not established that the Vento plaintiffs
had assigned all their interests in the Settlement Agreement
prior to the arbitration proceedings regarding the alleged
breaches of the Settlement Agreement." *Id.*

## i.   Developments in the Texas Action

In an action in Texas (the "Texas Action"), DLNGR attempted
to recover royalties in an interpleader action. DLNGR asserted

*Vento, et al. v. Crithfield, et al.*
Civil No. 2009-174
Memorandum Opinion
Page 17

that it was an assignee of the Vento's rights under the
Settlement Agreement. That court (the "Texas court") ordered
DLNGR to produce the assignment documents. (ECF No. 437-3.)

The Alliance Movants now argue that this Court's order
denying the motion to vacate should be vacated because DLNGR did
not produce the assignment documents in the Texas Action, even
when ordered to do so by the Texas court. The Court does not see
how this is relevant to the case at hand and certainly it is not
a basis for the Court to reconsider its prior order.

**ii.  Newly Discovered Evidence**

The Alliance Movants next argue that the Court's order
should be vacated because the Court's conclusions were clearly
erroneous.

In the Court's order denying the motion to vacate, the
Court held that DLNGR's assertions in the Texas Action were not
binding on the parties in this action because the movants had
"not directed the Court's attention to any record evidence (1)
demonstrating that the relationship between the Ventos and DLNGR
requires that the Ventos be bound by DLNGR's admissions; or (2)
establishing judicial estoppel." (ECF No. 434, at 20.) The
defendants argue that this is clearly erroneous because the
Vento Entities are judicially estopped from contradicting

*Vento, et al. v. Crithfield, et al.*
Civil No. 2009-174
Memorandum Opinion
Page 18

DLNGR's assertion that the settlement agreement was assigned to it.

In support of their argument, the defendants attach evidence of the "Final Judgment Confirming Arbitration Awards" issued by the court in the Texas Action (the "Texas Final Judgment").[7] The Texas Final Judgment was not submitted to the Court before the Court issued its order on the motion to vacate. As such, it is apparent that the defendants' motion seeking reconsideration is more fairly regarded as a motion based on newly discovered evidence, not clear error.

"Evidence is not 'newly discovered' if it 'was [actually] known or could have been known by the diligence of the defendant or his counsel.'" *United States v. Cimera*, 459 F.3d 452, 461 (3d Cir. 2006)(quoting *United States v. Bujese,* 371 F.2d 120, 125 (3d Cir.1967))(alterations in original). Here, it is not clear to the Court that the Texas Final Judgment is newly discovered evidence. The Texas Final Judgment was issued on March 18, 2015, thirteen days before the Court issued its order. Moreover,

---

[7] The defendants assert that this judgment was not in fact a final judgment because it failed to address all claims pending in the case. The Court need not resolve that issue at this time. Relatedly, the Court need not address whether the Texas Final Judgment is *res judicata* against any of the parties in this action because the Court ultimately agrees with the court in the Texas Action that the arbitration award should be confirmed, except where it has not been established that the Court has jurisdiction to do so.

*Vento, et al. v. Crithfield, et al.*
Civil No. 2009-174
Memorandum Opinion
Page 19

counsel for the defendants was familiar with the Texas Action.[8]

Regardless, even assuming *arguendo* that the Texas Final judgment

constitutes newly discovered evidence, vacatur of the Court's

denial of the motion to vacate is not appropriate because the

Texas Final Judgment does not establish that the Ventos should

be bound by DLNGR's assertions or that judicial estoppel is

appropriate.

> Courts have observed that "[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle," *Allen,* 667 F.2d, at 1166; accord, *Lowery v. Stovall,* 92 F.3d 219, 223 (C.A.4 1996); *Patriot Cinemas, Inc. v. General Cinema Corp.,* 834 F.2d 208, 212 (C.A.1 1987). Nevertheless, several factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be "clearly inconsistent" with its earlier position. *United States v. Hook,* 195 F.3d 299, 306 (C.A.7 1999); *In re Coastal Plains, Inc.,* 179 F.3d 197, 206 (C.A.5 1999); *Hossaini v. Western Mo. Medical Center,* 140 F.3d 1140, 1143 (C.A.8 1998); *Maharaj v. Bankamerica Corp.,* 128 F.3d 94, 98 (C.A.2 1997). Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled," *Edwards,* 690 F.2d, at 599. Absent success in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determinations," *United States v. C.I.T. Constr. Inc.,* 944 F.2d 253, 259 (C.A.5 1991), and thus poses little threat to judicial integrity. See *Hook,* 195 F.3d, at 306; *Maharaj,*

---

[8] The Court also notes that two of the named parties in the Texas Action are parties to this action.

*Vento, et al. v. Crithfield, et al.*
Civil No. 2009-174
Memorandum Opinion
Page 20

> 128 F.3d, at 98; *Konstantinidis,* 626 F.2d, at 939.
> A third consideration is whether the party seeking
> to assert an inconsistent position would derive an
> unfair advantage or impose an unfair detriment on
> the opposing party if not estopped. See *Davis,* 156
> U.S., at 689, 15 S.Ct. 555; *Philadelphia, W., &
> B.R. Co. v. Howard,* 13 How. 307, 335-337, 14 L.Ed.
> 157 (1851); *Scarano,* 203 F.2d, at 513 (judicial
> estoppel forbids use of "intentional self-
> contradiction ... as a means of obtaining unfair
> advantage"); see also 18 Wright § 4477, p. 782.

*New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001).

In the Texas Final Judgment, the Texas court granted

DLNGR's motion to confirm the arbitration awards. The Texas

court did not indicate that it was accepting an assertion by

DLNGR that the settlement agreement had been assigned to DLNGR

in its entirety. Indeed, there is no evidence that the Texas

court accepted DLNGR's assertion that DLNGR was entitled to

judgment based on the settlement agreement. To the contrary, the

Texas court held that "final judgment on the arbitration awards

. . . should be entered in favor of Vento Entities and against

the Alliance Entities." (ECF No. 437-4, at 1.) DLNGR is not

included in the list of Vento Entities.

Because there is no evidence that the Texas court accepted

DLNGR's assertion, the application of judicial estoppel to this

action would not be appropriate even if the relationship between

the Ventos and DLNGR required that the Ventos be bound by

DLNGR's admissions. Moreover, the motion seeking reconsideration

*Vento, et al. v. Crithfield, et al.*
Civil No. 2009-174
Memorandum Opinion
Page 21

does not challenge the Court's conclusion that there was no record evidence demonstrating that the relationship between the Ventos and DLNGR required that the Ventos be bound by the admissions of DLNGR, a different entity.

Accordingly, even assuming *arguendo* that the Texas Final Judgment is newly discovered evidence, the Court would deny the Alliance Movants' motion for reconsideration.

**C. Lift Stay and Reopen Case**

On August 29, 2012, the Court stayed this case pending the completion of arbitration. (*See* ECF No. 364.) In that order, the Court ordered the parties to "advise the Court when the matter before an arbitrator is concluded." (ECF No. 364, at 15.) The Court also noted "that the case [would] be restored to the trial docket when the action is in a status so that it may proceed to final disposition . . . ." (*Id.*) Thereafter, the parties filed a number of motions to confirm and vacate the arbitration. At the time, it was unclear to the Court whether arbitration had in fact concluded. As such, the Court denied without prejudice the various motions to confirm and enforce the arbitration award and ordered "that no later than October 15, 2014, the arbitrating parties, who have not been dismissed, shall file either a Stipulation or an appropriate report from the arbitrator regarding whether arbitration has been concluded." (ECF No.

*Vento, et al. v. Crithfield, et al.*
Civil No. 2009-174
Memorandum Opinion
Page 22

424.) On October 8, 2014, the Ventos filed a report of the
arbitrator. (ECF No. 425.) In that report, the arbitrator
informed the Court that arbitration had concluded. (*Id.*)
Accordingly, it is appropriate to lift the stay in this case.
The Court will lift the stay and restore the case to the active
docket.

**D. Confirm Settlement**

In addition to moving to lift the stay, the Ventos' motion
seeks to confirm the arbitration award. Before confirming the
arbitration award, the Court must determine whether confirmation
is governed by the FAA or the Convention on the Recognition and
Enforcement of Foreign Arbital Awards (the "New York
Convention"). The New York Convention provides that it "shall
apply to the recognition and enforcement of arbitral awards made
in the territory of a State other than the State where the
recognition and enforcement of such awards are sought, and
arising out of differences between persons, whether physical or
legal. It shall also apply to arbitral awards not considered as
domestic awards in the State where their recognition and
enforcement are sought." *Convention Done at New York June 10,
1958;*, T.I.A.S. No. 6997 (Dec. 29, 1970)(Article I(1)). An
arbitration award falls under the New York Convention if it
"involves property located abroad, envisages performance or

*Vento, et al. v. Crithfield, et al.*
Civil No. 2009-174
Memorandum Opinion
Page 23

enforcement abroad, or has some other reasonable relation with one or more foreign states." 9 U.S.C. § 202. The New York Convention also applies to awards that are not entirely between citizens of the United States. *Id.*

Here, the arbitration award was issued against a number of entities who are not citizens of the United States. As such, the New York Convention applies. When the New York Convention applies to an action, the domestic Federal Arbitration Act ("FAA") also applies to the extent it is not in conflict with the New York Convention. *Century Indem. Co. v. Certain Underwriters at Lloyd's, London, subscribing to Retrocessional Agreement Nos. 950548, 950549, 950646*, 584 F.3d 513, 523 (3d Cir. 2009).

## 1. New York Convention Formalities

Under Article IV(1) of the Convention, "[t]o obtain the recognition and enforcement mentioned in the preceding article, the party applying for recognition and enforcement shall, at the time of the application supply . . . [t]he duly authenticated original award or a duly certified copy thereof . . . ."

This certification requirement has been interpreted very loosely. Indeed, the Third Circuit has not required the authentication nor certification of an arbitration agreement. *Al-Haddad Bros. Enterprises v. MS Agapi*, 635 F. Supp. 205, 209-

*Vento, et al. v. Crithfield, et al.*
Civil No. 2009-174
Memorandum Opinion
Page 24

10 (D. Del. 1986) *aff'd sub nom. Al-Haddad Bros. Enterprises v.*

*MS Agapi*, 813 F.2d 396 (3d Cir. 1987). In *Al Haddad Bros.*

*Enterprises v. M/S AGAPI*, the district court affirmed an

arbitration award, holding that neither authentication nor

certification of the arbitration agreement was necessary. The

court reasoned that

> The purpose for requiring submission of the
> original agreement or a certified copy is to prove
> the existence of an agreement to arbitrate. Such
> proof already exists in this case because the
> Court has determined on several prior instances
> that the charter party between Al Haddad and
> Diakan contained a London arbitration provision.
> Those rulings form sufficient verification of the
> existence of an arbitration agreement to allow
> enforcement of the award here.

*Al-Haddad Bros. Enterprises*, 635 F. Supp. at 209-10. On appeal,

the Third Circuit affirmed the district court without opinion.

*Al-Haddad Bros. Enterprises*, 813 F.2d at 396.

With respect to the arbitration award itself, courts have

permitted certification by a member of the arbitration panel or

certification by the Director of the New York Regional Office of

the American Arbitration Association, and even certification by

petitioners' attorney. *See Matter of Arbitration between Cont'l*

*Grain Co. & Foremost Farms Inc.*, No. 97 CIV. 0848 (DC), 1998 WL

132805, at *2 (S.D.N.Y. Mar. 23, 1998)(director of regional

office of American Arbitration Association); *Bergesen v. Joseph*

*Vento, et al. v. Crithfield, et al.*
Civil No. 2009-174
Memorandum Opinion
Page 25

*Muller Corp.*, 710 F.2d 928, 934 (2d Cir. 1983)(member of
arbitration panel). Indeed, one court has excused a failure to
provide an original or certified copy of the award or agreement
because "of the confused nature of the proceedings" and no party
contested their validity. *Hewlett-Packard, Inc. v. Berg*, 867 F.
Supp. 1126, 1130 (D. Mass. 1994), *vacated on other grounds,*
Hewlett-Packard Co. v. Berg, 61 F.3d 101 (1st Cir. 1995).

Here, the Court previously recognized the existence of the
arbitration agreement when it stayed the action and neither
party contests its express terms. Moreover, the arbitration
awards are signed by the arbitrator and neither party contests
that those awards were issued. Under these circumstances, the
Court finds that the required formalities have been satisfied.

Once these formalities have been satisfied, the Court must
confirm the arbitration award unless there are grounds for
setting it aside. *See Convention Done at New York June 10,
1958;*, T.I.A.S. No. 6997 (Dec. 29, 1970)(Article V-VI). The New
York Convention "specifically contemplates that the [country] in
which, or under the law of which, the award is made, will be
free to set aside or modify an award in accordance with its
domestic arbitral law and its full panoply of express and
implied grounds for relief." *See Ario v. Underwriting Members of
Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277,

*Vento, et al. v. Crithfield, et al.*
Civil No. 2009-174
Memorandum Opinion
Page 26

292 (3d Cir. 2010), *as amended* (Dec. 7, 2010); *Convention Done*

*at New York June 10, 1958*;, T.I.A.S. No. 6997 (Dec. 29,

1970)(Article I(1).

Here, the arbitration agreement specifies that "the law of

the U.S. Virgin Islands will be the 'governing law' for purpose

of . . . [the] arbitration process." (ECF No. 361-4 at 4.) As

such, this Court may set aside the arbitration award on any

ground permitted under the FAA.

**2. Personal Jurisdiction**

A number of defendants have raised objections to personal

jurisdiction. A court confirming an arbitration award must have

personal jurisdiction over the parties. *See Telcordia Tech Inc.*

*v. Telkom SA Ltd.*, 458 F.3d 172, 178-79 (3d Cir. 2006)("Although

the New York Convention does not diminish the Due Process

constraints in asserting jurisdiction over a nonresident alien,

the desire to have portability of arbitral awards prevalent in

the Convention influences the answer as to whether Telkom

"reasonably anticipate(d) being haled into" a New Jersey

court.")

Here, Alliance Holding Co., Ltd., Alliance Royalties, Inc.,

Alliance Royalties, LLC, Fidelity Insurance Co., Ltd., First

Fidelity Trust, Ltd., Westminster, Hope, & Turnberry, Ltd., and

Offshore Trust Services, LLC (collectively, the "Offshore

*Vento, et al. v. Crithfield, et al.*
Civil No. 2009-174
Memorandum Opinion
Page 27

Defendants") have repeatedly moved to dismiss for lack of
personal jurisdiction. The Court initially permitted
jurisdictional discovery and denied the motions to dismiss
without prejudice. (*See* ECF No. 216.) These parties then
reasserted their motion to dismiss for lack of personal
jurisdiction (ECF No. 255.) That motion was closed when this
case was placed on the suspense docket. The motion was then
renewed once the Ventos began seeking to confirm the arbitration
award. (ECF No. 388.)

    The Offshore Defendants also noted their objection to
personal jurisdiction in the Alliance Movants' opposition to the
motion to confirm the amended arbitration award.[9] (ECF No. 389
(motion); ECF No. 392 (opposition).) The Court denied the
renewed motion without prejudice when it granted a motion to
enforce the stay in this case. (*See* ECF No. 424.) In the Ventos'
"Second Motion to Enforce Judgment and Confirm" the arbitration
awards, (ECF No. 426), the Ventos, in part, renewed their motion
to confirm the amended arbitration award, (*See* ECF No. 389).

    As previously noted, the Offshore Defendants asserted in
their opposition to that motion, (ECF No. 389), that no award
should be confirmed against them until the Court establishes
that it may exercise personal jurisdiction over them.  As such,

---

[9] The Offshore Defendants are a subset of the Alliance Movants.

*Vento, et al. v. Crithfield, et al.*
Civil No. 2009-174
Memorandum Opinion
Page 28

the Court finds that the matter of personal jurisdiction must be resolved before confirming the arbitration award.

The Ventos assert that the Alliance Entities have waived any objections to personal jurisdiction by requesting the Court's Appointment and approval of an Arbitrator; seeking Protective Orders and Discovery Schedules from the Court; moving the court to stay these proceedings in favor of the Arbitration Proceedings; and filing a motion to vacate the arbitration award.

It is true that "where a party seeks affirmative relief from a court, it normally submits itself to the jurisdiction of the court with respect to the adjudication of claims arising from the same subject matter." *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 443 (3d Cir. 1999). However, the Court is unaware of any court that has held that a motion to vacate an arbitration award seeks affirmative relief such that objections to personal jurisdiction are waived. Indeed, the only authority on the issue indicates the contrary. *See, e.g., World Missions Ministries, Inc. v. Gen. Steel Corp.*, No. CIV. RWT 06-13, 2006 WL 2161851, at *4 n.7 (D. Md. July 28, 2006)("Under the Federal Rules of Civil Procedure, even "filing a counterclaim, compulsory or permissive, cannot waive a party's objections" to personal jurisdiction or venue.

*Vento, et al. v. Crithfield, et al.*
Civil No. 2009-174
Memorandum Opinion
Page 29

*Networks Corp.,* 399 F.3d 1302, 1308 (Fed.Cir.2005). If General
Steel had chosen to substantively oppose confirmation of the
arbitration award, it could have done so—either raising
arguments in opposition or by a motion to vacate—without
compromising its venue defense."); *cf. Matter of Arbitration
between InterCarbon Bermuda, Ltd. & Caltex Trading & Transp.
Corp.,* 146 F.R.D. 64, 70 (S.D.N.Y. 1993)(holding that a motion
to confirm the arbitration award filed in response to a motion
to vacate the arbitration award did not waive objections to
personal jurisdiction). Similarly, a motion to stay litigation
pending arbitration proceedings does not waive objections to
personal jurisdiction. *Gerber v. Riordan*, 649 F.3d 514, 519 (6th
Cir. 2011)("Defendants' motion for a stay [of litigation pending
arbitration] 'does not come close to what is required for waiver
or forfeiture' of a personal jurisdiction defense. *Id.; see also
Lane v. XYZ Venture Partners, L.L.C.,* 322 Fed.Appx. 675, 678
(11th Cir.2009) (holding that defendants 'did not waive their
defense of lack of personal jurisdiction by moving to stay the
proceedings').") Moreover, the Offshore Defendants continuously
asserted lack of personal jurisdiction. Under these
circumstances, the Court does not find that their objections to
personal jurisdiction were waived.

*Vento, et al. v. Crithfield, et al.*
Civil No. 2009-174
Memorandum Opinion
Page 30

The Court also finds that the FAA does not provide the Court with personal jurisdiction. If the parties designate a court to confirm the arbitration award in their agreement, then that court has jurisdiction to confirm the award. *See* 9 U.S.C. § 9. Here, the arbitration agreement makes no such designation of this Court.

In addition, the FAA permits application to the United States court in the district in which the arbitration award was made. *See id.* Here, the record reflects no evidence that the arbitration award was made in the Virgin Islands. As such, neither of the FAA's provisions providing special jurisdiction over motions to confirm arbitration awards apply to this Court.

The Ventos next argue that the objections to personal jurisdiction were waived in the arbitration agreement. In the section of the arbitration agreement titled "Preservations of Jurisdictional Rights and Objections," the arbitration agreement provides that

> nothing herein shall be deemed a waiver of any right to object to, nor a stipulation to submit to, the jurisdiction of any united states federal or state court . . . Notwithstanding the foregoing however in the event there is an arbitration award against any party, the prevailing party shall be entitled to convert that award to a final judgment and seek execution in any jurisdiction where the losing party's assets may be found.

(ECF No. 361-4 at 3.)

*Vento, et al. v. Crithfield, et al.*
Civil No. 2009-174
Memorandum Opinion
Page 31

      The Ventos assert that this provision is properly read as a
waiver of jurisdictional objections to a motion to confirm an
arbitration award. In contrast, the Offshore Defendants assert
that it is only a waiver of personal jurisdiction in
jurisdictions where a party has assets.

          In the process of defining the objective intent of
          the parties, a court must examine the entire
          agreement. "A writing is interpreted as a whole,
          and all writings that are part of the same
          transaction are interpreted together."

*Williams v. Metzler*, 132 F.3d 937, 947 (3d Cir. 1997). (quoting
Restatement (Second) of Contracts § 202(2)).

      Here, the arbitration agreement provides that the parties
signing the agreement "agree[d] to submit all issues remaining
between and amongst them, including compliance with the terms of
the Partial Settlement Agreement and the Disputed Measure of
Royalty Agreement and agree to final binding arbitration
pursuant to the terms of this Agreement." (ECF No. 361-4 at 2.)
Because all issues between the parties were to be resolved by
arbitration, interpreting the second portion of the reservation
of rights section--providing for confirmation and execution of
the arbitration award--in the manner advanced by the Ventos
would remove any meaning from the first portion of that section-
-providing that the arbitration agreement was not a waiver of

*Vento, et al. v. Crithfield, et al.*
Civil No. 2009-174
Memorandum Opinion
Page 32

objections to jurisdiction. As such, the Court rejects the

Ventos' interpretation of that provision.

Turning now to the interpretation advanced by the Offshore

Defendants, the Court finds that interpretation more plausible.

The Ventos, as the parties asserting personal jurisdiction, have

an obligation to establish personal jurisdiction. *See Mellon*

*Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d

Cir. 1992). A review of the record here indicates that they have

not provided any evidence that the Offshore Defendants have

assets in the U.S. Virgin Islands. As such, the arbitration

agreement does not provide a waiver of personal jurisdiction

with respect to confirmation of the arbitration award.

The Court next turns to whether jurisdiction is proper

under the long-arm statute and the due process clause. The

Ventos, in their "Second Motion to Enforce Judgment and Confirm"

the arbitration awards, have not briefed this issue. Looking

back though the docket, the Court finds a number of oppositions

by the Ventos to motions to dismiss filed by the Offshore

Defendants. The Ventos only attached the relevant exhibits to

those oppositions in one instance. (*See* ECF No. 391.) In that

filing, the Ventos filed hundreds of pages of documents without

any citation to those documents or indication of how those

*Vento, et al. v. Crithfield, et al.*
Civil No. 2009-174
Memorandum Opinion
Page 33

documents establish personal jurisdiction.

"Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment . . . ." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 916 (5th Cir. 1992), *opinion corrected* (Mar. 26, 1992). Similarly, it is not the Court's responsibility to sift through the documents submitted here. As such, the Court will deny the motion to confirm without prejudice to the extent that the Ventos seek confirmation of the arbitration award against the Offshore Defendants.

**3. Other Objections to Confirmation**

9 U.S.C. § 10 provides that a district court may vacate an arbitration award where: (1) "the award was procured by corruption, fraud, or undue means"; (2) "there was evident partiality or corruption in the arbitrators, or either of them"; (3) "the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced"; or (4) "the arbitrators exceeded their powers or so imperfectly executed them that a

mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10.

9 U.S.C. § 11 provides that a district court may modify or correct an arbitration award where: (1) "there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award;" (2) "the arbitrators have awarded upon a matter not submitted to them;" or (3) "the award is imperfect in matter of form not affecting the merits of the controversy." 9 U.S.C. § 11.

Here, the Ventos entered into an arbitration agreement that provided that a prevailing party was entitled to convert an arbitration award into a final judgment. As such, the Court must confirm the arbitration award unless there is grounds for vacatur, modification, or correction of the award. *See* 9 U.S.C. § 9. The Court has rejected the grounds for vacatur asserted in the defendants' motion to vacate. Moreover, no additional grounds for vacatur, modification, or correction of the award have been asserted in the defendants' opposition to the motion to confirm. Accordingly, the Court finds that confirmation of the arbitration award is appropriate as to all parties that the

*Vento, et al. v. Crithfield, et al.*
Civil No. 2009-174
Memorandum Opinion
Page 35

arbitrator found liable and are currently in this action, other

than the Offshore Defendants.

An appropriate judgment follows.


S_____
   **Curtis V. Gómez**
   **District Judge**